NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**BILLJCO, LLC,**
*Appellant*

**v.**

**APPLE INC.,**
*Appellee*

_____

2023-2189, 2023-2190

_____

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00131, IPR2022-00310.

_____

Decided: May 16, 2025

_____

JOSEPH KUO, Saul Ewing Arnstein & Lehr LLP, Chicago, IL, argued for appellant. Also represented by BRIAN MICHALEK, ELIZABETH A. THOMPSON; BRIAN LANDRY, Boston, MA; COURTLAND COLLINSON MERRILL, Minneapolis, MN.

KEVIN JOHN POST, Ropes & Gray LLP, New York, NY, argued for appellee. Also represented by BRIAN LEBOW, CASSANDRA B. ROTH; JAMES RICHARD BATCHELDER, CHRISTOPHER M. BONNY, JAMES LAWRENCE DAVIS, JR., East

Palo Alto, CA; DOUGLAS HALLWARD-DRIEMEIER, Washington, DC.

———————————

Before CHEN, SCHALL, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

BillJCo, LLC ("BillJCo") appeals two final written decisions of the Patent Trial and Appeal Board (the "Board") determining that certain claims of U.S. Patent Nos. 8,639,267 (the "'267 patent") and 9,088,868 (the "'868 patent") are unpatentable under 35 U.S.C. § 103 in view of several grounds asserted in the *inter partes* review petition filed by Apple, Inc. ("Apple"). BillJCo challenges the Board's claim construction, findings regarding the content of the prior art, and findings on BillJCo's evidence of objective indicia of non-obviousness. For the following reasons, we affirm the Board's decisions.

I

We begin with the challenged aspects of the Board's analysis of claims 1, 5, 13, 20, 21, 29, 30, 34, 42, and 49 of the '267 patent.

First, the Board did not adopt BillJCo's proffered construction of the claim term "privilege" to exclude "preferences" and explained that "[n]o further construction of the term 'privilege' is necessary." J.A. 6–7. On appeal, BillJCo argues that the Board erred by construing "privilege" to include preferences. Appellant's Br. 26. The strongest support for BillJCo's construction argument is that the '267 patent specification expressly identifies user "preferences" and user "permissions" as different types of "conceivable user configurations." U.S. Patent No. 8,639,267 col. 2 ll. 45–48. But this support is insufficient and the specification does not support the inclusion of BillJCo's desired negative limitation: construing "privilege" to exclude "preferences." Our court has "identified claim

constructions that exclude a particular element as including a 'negative limitation' and held that such exclusions must find support either in 'the words of the claim' or through an 'express disclaimer or independent lexicography in the written description that would justify adding that negative limitation.'" *Ethicon LLC v. Intuitive Surgical, Inc.*, 847 F. App'x 901, 907 (Fed. Cir. 2021) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). None of these bases for importing a negative limitation into the claim language is present here. We thus adopt the Board's construction of this term.

Second, the Board agreed with Apple that Haberman[1] teaches the "privilege-data limitation." J.A. 9. BillJCo argues that "there is no evidence, let alone substantial evidence, to support the conclusion that Haberman's preferences are actually privileges." Appellant's Br. 39. We disagree and hold that substantial evidence—including Haberman's disclosure, e.g., paragraphs 121, 164–66, and 168—supports the Board's finding.

Third, the Board declined to adopt BillJCo's construction of "destination identity" and declined to further construe that term. J.A. 7. We agree with the Board that, during oral argument before the Board, BillJCo's counsel "explained that [its] destination-identity argument is the same as its privilege argument." J.A. 10; J.A. 1413–15 ("So, the destination identity is part and parcel with the privilege versus progress [sic] argument."). Because we have rejected BillJCo's "privilege" versus "preferences" argument, we agree with the Board and Apple that we need not further address this issue. J.A. 7; Appellee's Br. 30–31; *see Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be

---

[1] U.S. Patent Application Publication No. 2005/0096044 ("Haberman").

construed that are in controversy, and only to the extent necessary to resolve the controversy.").

Fourth, the Board agreed with Apple that "Haberman teaches the claimed destination identity." J.A. 10. BillJCo argues that "Apple fail[ed] to demonstrate that Haberman discloses this limitation." Appellant's Br. 42. We disagree and hold that substantial evidence—including Haberman's disclosure, e.g., paragraphs 26–27, 36, 168, and 181—supports the Board's finding.

## II

We now turn to the challenged aspects of the Board's analysis of claims 1, 2, 5, 20, 24, 25, 28, and 43 of the '868 patent.

First, in construing the claim term "user specified location based event configuration," the Board determined that the phrase "should not be narrowly construed to mean 'privilege data,'" as BillJCo proposed. J.A. 30. BillJCo argues that the Board erred by not construing the subject claim limitation as "reciting configuring privilege data." Appellant's Br. 34. We disagree. Instead, we agree with the Board that the ordinary meaning of this limitation in light of the specification and the claim language does not limit "user specified location based [ ] configuration" to "privilege data." J.A. 30 (alteration in original). As Apple explains, the claim term recites neither "privilege" nor any word or phrase that means "privilege"—like "permission"—and instead, it recites "configuring a user specified location based event configuration." U.S. Patent No. 9,088,868 col. 283 ll. 55–63; Appellee's Br. 40. BillJCo's cited portions of the specification, '868 patent Title, col. 12 ll. 11–18, do not persuade us that the Board erred. That the '868 patent title contains the word "permissions" and the specification describes "[a] user friendly configuration environment . . . wherein [interchanging information] . . . causes triggering of privileged actions configured by users" do not convince us that we should construe "user specified

location based event configuration" as reciting configuring privilege data. *Id.* col. 12 ll. 11–15. The specification discloses "user[] preferences, credential information, permissions, customizations, billing information, surfing habits, *and other conceivable user configurations*." *Id.* col. 2 ll. 46–48 (emphasis added). Plainly, the specification contemplates that there are user configurations other than privileges or permissions. *See, e.g.*, *id.* Figs. 38, 45 (users also configure groups, actions, and parameter information, among other things). We thus reject BillJCo's arguments and adopt the Board's construction.

Second, the Board rejected BillJCo's argument that Haberman fails to disclose or make obvious the "user specified location based event configuration" limitation because BillJCo's "contentions [we]re based on its proposed construction" regarding "configuring privilege data," which the Board did not adopt. J.A. 38. On appeal, BillJCo argues that "each of the '868 [patent's] Challenged Claims require configuring of privilege data." Appellant's Br. 43. This argument fails in light of our decision to adopt the Board's construction of "user specified location based event configuration" above. Substantial evidence—including Haberman's disclosure, e.g., paragraph 168, and Apple's expert testimony, which the Board credited—supports the Board's finding that Haberman teaches this limitation as properly interpreted by the Board.

Third, the Board construed the claim term "identifier data," determining that the term should not be narrowly construed to mean "grantee identity," as BillJCo proposed. J.A. 30–31. BillJCo argues that "the grantee identity corresponds to the claimed identifier data, which is then compared with configured privilege data," and that "[t]he Board provide[d] little, if any, explanation for not determining that the subject claim limitation relates to configuring privilege data." Appellant's Br. 37. We agree with the Board that, although BillJCo's cited portion of the specification, '868 patent col. 120 ll. 46–59, provides that a

permission is granted from a grantor identity to a grantee identity, and that actions associated with the permission can automatically occur, nothing in the cited passage defines "identifier data" as "grantee identity." J.A. 31. The passage does not mention "identifier" at all, let alone clearly define identifier data as grantee identity. We thus adopt the Board's construction.

Fourth, the Board found that the prior art disclosed the claimed "identifiers." The Board found that a person of ordinary skill in the art would have been motivated to combine the teachings of Haberman with the teachings of Boger,[2] and that the combination of Haberman and Boger teaches a "first identifier." J.A. 43–46. The Board further agreed with Apple that both Haberman and Boger each disclose a "first identifier." *See* J.A. 44. Substantial evidence—including Haberman's disclosure (e.g., paragraph 132), Boger's disclosure (e.g., paragraph 6), and Apple's expert testimony—supports the Board's findings. The Board then found that Haberman teaches the "second identifier" and "third identifier," and that Boger teaches the "third identifier" to the extent Haberman does not explicitly teach it. *See* J.A. 48–50. Again, substantial evidence—including Haberman's disclosure (e.g., paragraphs 27 and 36) and Boger's disclosure (e.g., paragraphs 3–4, 6, and 9)—supports the Board's findings. Substantial evidence—including Haberman's disclosure, Boger's disclosure, and Apple's expert testimony—also supports the Board's findings regarding motivation to combine the teachings of Haberman and Boger.

## III

Last, we address BillJCo's challenges to the Board's findings regarding objective evidence of non-obviousness.

---

[2] U.S. Patent Application Publication No. 2002/0159401 ("Boger").

BillJCo's asserted objective evidence of non-obviousness included copying and commercial success.

The Board found BillJCo's circumstantial evidence of copying insufficient to suggest that Apple copied the patented technology. BillJCo does not cure this deficiency on appeal. BillJCo argues that "at least Challenged Claims 1 and 22 of the '267 Patent and Challenged Claims 1 and 24 of the '868 Patent cover Apple devices" and that "Apple's access to the patented technology and implementation of devices that embody the Challenged Claims is substantial evidence of the challenged claims' nonobviousness." Appellant's Br. 56–57. Again, this is insufficient. "Copying requires duplication of features of the patentee's work based on access to that work, lest all infringement be mistakenly treated as copying." *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1137 (Fed. Cir. 2019) (citation omitted). BillJCo's asserted evidence does not meet these requirements. Accordingly, the Board reasonably found that this evidence is entitled to little weight.

Next, the Board found that the alleged touting by Apple, on which BillJCo relies, relates to the products' functionality, not their commercial success. Commercial success is "usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent." *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1378 (Fed. Cir. 2021) (citation omitted) (collecting cases where sales figures, or sales information, alone constituted evidence of commercial success). Here, as Apple explains, "BillJCo submitted no sales data, public statements, or any other evidence that could be used to infer commercial success." Appellee's Br. 63. We hold that the Board reasonably found that this evidence is entitled to little weight.

Finally, the Board found that, although BillJCo relies on licensing agreements pertaining to the patented technology as evidence of commercial success, it did not

demonstrate a sufficient nexus between the challenged claims and the evidence offered. Substantial evidence supports this finding. The asserted licenses cover more than thirty patents, and BillJCo failed to provide any evidence regarding the weight or importance of the '267 patent or '868 patent to these agreements. "While licenses can sometimes tilt in favor of validity in close cases, they cannot by themselves overcome a convincing case of invalidity without showing a clear nexus to the claimed invention." *ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1361 (Fed. Cir. 2015). Here, BillJCo "points to no evidence that the licenses it cites were taken based on the merits of the invention claimed in the ['267 or '868] patent." *Id.* at 1362. Accordingly, the Board reasonably found that this evidence is entitled to little weight.

## IV

We have considered BillJCo's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decisions.

**AFFIRMED**